476 So.2d 994 (1985)
STATE of Louisiana
v.
Gayle Joseph RODRIGUEZ.
No. 85 KA 0276.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*995 Walter J. Senette, Jr., Asst. Dist. Atty., Franklin, for appellee.
Robert P. Fuhrer, Indigent Defender Bd., Franklin, for appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Defendant, Gayle Joseph Rodriguez, was charged by bill of information with third offense possession of marijuana, in violation of LSA-R.S. 40:966. Defendant filed a motion to suppress physical evidence, which was denied by the trial court. He then pled guilty as charged, reserving his right to appeal the denial of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976).
Defendant was sentenced to serve five years at hard labor. The sentence was suspended; and defendant was placed on supervised probation under the conditions specified in LSA C.Cr.P. art. 895 and the following special conditions: one year imprisonment in parish jail, payment of $1,000 to the Indigent Defender Board, payment of $10 to the Department of Corrections for supervision costs, payment of court costs, completion of the Teen Challenge Program, and enrollment in a substance abuse program.
Defendant now appeals, alleging as his sole assignment of error the denial of his motion to suppress the physical evidence (marijuana). He argues that his initial detention was not valid under LSA C.Cr.P. art. 215.1 and that the subsequent weapons search was not justified.
Only two witnesses, Don Barras and Officer Leroy Whitney, testified at the hearing on the motion to suppress the marijuana, both on behalf of the state.
Barras, an employee of Lakewood Hospital in Morgan City, testified that his job is to be outside, for security purposes, whenever the nurses change shifts at night. He testified that about 11:30 p.m. on December 5, 1983, he was walking several nurses to their cars, when he saw defendant walking briskly out of the woods toward a lady in the back of the parking lot. Barras left the nurses and walked toward the lady. When defendant saw Barras, he slowed his pace and walked behind the lady's car. The lady got into her car and left.
Barras asked defendant if he needed any help. Defendant, whose speech was slurred, told Barras he was waiting for a ride with his brother. Barras returned to walk the nurses to their cars.
*996 At that time, Barras saw defendant walk behind the Morgan City Medical Center building located across the street from the hospital. There being nothing behind that closed building but an empty field, Barras called the hospital's inside guard, who in turn called the police.
Officer Leroy Whitney of the Morgan City Police Department responded to the call from the hospital guard, and was advised that there was a white male "prowling around the building". He testified that the medical center is a complex of doctor's offices, a pharmacy, and related businesses. It had been burglarized previously.
As Officer Whitney approached the complex, he saw defendant walk out from a recess in the building. Defendant was about five to ten feet from the building, being between it and the sidewalk. Officer Whitney, with revolver drawn, ordered defendant to halt and frisked him for weapons. He found a small screwdriver and adjustable wrench in defendant's back pocket. Officer Whitney kept the screwdriver and asked Captain Carlisle, who arrived about that time, to detain defendant while he checked the building for any signs of forcible entry.
Officer Whitney found two or three windows which showed signs of attempted forcible entry. The molding on a window had been recently removed, revealing a clean surface as compared to the adjacent weathered surface. The window also bore evidence of pry marks, similar to those which could have been made with the screwdriver found on defendant. One window which showed evidence of attempted entry was near the place Officer Whitney first encountered defendant.
Defendant was placed under arrest for attempted burglary. He was advised of his rights and taken to city jail. During the booking process, Officer Kramer found on defendant a matchbox containing a marijuana cigarette butt and two small, blue tablets.
Defendant contends that his initial detention and the weapons search were unconstitutional, resulting in an illegal arrest.[1] He argues that the seizure of the marijuana was tainted and therefore it should be suppressed.
The Fourth Amendment to the United States Constitution and Article I, section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Schuler, 457 So.2d 1240 (La.App. 1st Cir.1984), writ denied, 462 So.2d 191 (La.1984). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Belton, supra; State v. Schuler, supra. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, supra; State v. Schuler, supra. The totality of circumstances must be considered in determining whether or not reasonable cause exists. State v. Belton, supra. In order to assess the reasonableness of an officer's conduct, it is necessary to balance the need to search or seize against the harm of invasion. State v. Schuler, supra.
Herein, Officer Whitney was acting alone, initially, in his investigation of a complaint from a security guard that a *997 man was "prowling" around a closed medical center late at night. The medical center had been burglarized previously. He encountered defendant between the building and the sidewalk. There was no apparent justification for defendant's presence other than criminal activity. Under "the facts and circumstances known to the arresting officer", we find that Officer Whitney's initial detention of defendant was justified. See State v. Boyd, 349 So.2d 1256, 1258 (La.1977).
However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. Criminality and weaponry are neither synonymous nor mutually inclusive. However, in many situations, the circumstances that justify the stop also warrant the frisk. See State v. Wade, 390 So.2d 1309 (La. 1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981).
In State v. Wade, supra at 1312-1313, the Court stated:
The purpose of allowing a limited weapons search is to prevent harm to police officers by allowing action prior to a crisis stage. Terry, supra. Police officers are not required to stand by and give a suspect the first move before taking action. `The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Equally important is the protection of the suspect, presumed innocent by law, from the harm that could result to him should he naively do an act interpretable as reaching for a weapon at a time when a police officer may reasonably suspect the presence of a weapon. Within this class of actions could be such innocent acts as reaching into the back pocket to produce a wallet or thrusting a hand into a jacket for a pack of cigarettes.
See also State v. Schuler, supra.
We find that, in the instant case, Officer Whitney was reasonably justified in his belief that his safety, and possibly that of defendant, was in danger. At the time of the weapons frisk, he was alone with defendant, late at night, in a secluded area. Under these circumstances, the amenities of an initial investigatory conversation may be excused. Officer Whitney was not required to stand by and allow the defendant the first move before taking action.
Therefore, we find both the initial detention and weapons search herein were justified. Defendant's sole assignment of error lacks merit.

PATENT ERROR
We note a patent sentencing error. The trial court ordered defendant to pay $10 to the Department of Corrections for supervision costs. This fee is authorized by LSA-C.Cr.P. art. 895.1(C), which was added to the law by Act 136 of 1984. Since it was not in effect at the time of the commission of the offense herein, it may not be used as a basis to impose a supervision fee as a condition of probation. Therefore, the condition of probation requiring defendant to pay the supervision fee must be vacated. In all other respects, the sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED.
NOTES
[1] Defendant does not argue that there was no probable cause for the arrest after the screwdriver and suspect windows were discovered. The focal points of his argument are the initial detention and weapons search. Therefore, our review will, likewise, focus on those incidents.