STEVEN R. PLOTKIN, Judge.
The first issue in this appeal is whether the trial court committed reversible error when it permitted the State’s witness to comment on the defendant’s behavior prior to his participation in a line up. The other issue is whether the trial court erred in denying the defendant’s motion to suppress the evidence. For the reasons below, we affirm the judgment of the trial court.
PROCEDURAL HISTORY
Defendant Jake Dangerfield was charged by bill of information with one count of first-degree robbery in violation of La. R.S. 14:64.1. Defendant pled not guilty. He was tried by a twelve-person jury but they were unable to reach a verdict. The defendant was re-tried and a twelve-person jury found the defendant guilty as charged. The defendant was sentenced to forty years without the benefit of probation, parole, or suspension of sentence. The State filed a multiple bill alleging the defendant to be a second felony offender. After a multiple bill hearing, the defendant was adjudged to be a second felony offender. The trial court vacated its previous sentence of forty years and re-sentenced the defendant to fifty years without the benefit of parole, probation or suspension of sentence.
*1153 | .STATEMENT OF FACTS
Perry Dolce testified that on February 14, 2001, he had pulled into the single car garage attached to his place of business. At approximately 3:45 p.m. the defendant entered the garage with his left hand in his pocket and demanded that Mr. Dolce exit his 2000 Mercury Sable. Mr. Dolce further testified that he complied with the defendant’s demand, and as he was about to walk out of the garage the defendant ordered him to stand in front of the vehicle. As the defendant exited the garage in the vehicle Mr. Dolce was able to get a good look at the defendant. Mr. Dolce testified that he left paperwork on the front passenger seat, his cell phone in a compartment, and his wallet with his identification and credit cards in his suit jacket, which was inside his vehicle. After the defendant left with his vehicle Mr. Dolce went to his office and called 911 to report the crime. When the police arrived on the scene Mr. Dolce gave them a description of the defendant as a Black male, in his early to mid twenties, five feet eight inches tall, wearing a white t-shirt, baggy jeans, and gold wire-rim glasses. Mr. Dolce testified he notified his credit card companies and his cell phone service provider of the theft. When Mr. Dolce received his cell phone statement there were numbers on the statement he did not recognize. Mr. Dolce faxed the statement to the police. Mr. Dolce testified that about one week after the incident Detective Walsh of the New Orleans Police Department showed him a photographic line-up. Mr. Dolce narrowed his identification to two individuals but he was reluctant to choose one individual because they were not wearing glasses. Approximately three weeks after his vehicle was stolen Mr. Dolce viewed a physical line-up and he identified the defendant as the man who stole his car.
| Officer Abreace Daniel, of the New Orleans Police Department, testified that he responded to a traffic accident at the intersection of Tulane Avenue and S. Ren-don Street. When he arrived on the scene Officer Daniel found a 1993 Jeep Cherokee and a 2000 Mercury Sable were involved in a collision. The driver of the Jeep was off-duty officer Edward Derringer and the Mercury Sable was driven by the defendant. Officer Daniel asked the defendant for a driver’s license and insurance, but he was unable to produce them. Officer Daniel testified the defendant stated the vehicle he was driving belonged to his uncle. Officer Daniel further testified that he found a lease agreement and a vehicle registration in Perry Dolce’s name in the Mercury Sable. Officer Daniel arrested the defendant for driving without a driver’s license and insurance.
Detective Michael Walsh, of the New Orleans Police Department Robbery Investigation Unit, testified that on February 14, 2001, he was contacted by Officer Hillary Smith about a robbery that took place in the 2100 block of Decatur Street. When Detective Walsh arrived on the scene he interviewed Mr. Dolce and began á follow-up investigation. As part of the follow-up investigation Detective Walsh met with the defendant in an interview room of Central Lock-up. Detective Walsh read the defendant his rights and asked the defendant if he would like to give a statement. The defendant stated that on the day Mr. Dolce’s vehicle was stolen between 3:35 p.m. and 4:00 p.m. he was walking down Royal Street near Elysian Fields. A person driving a 2000 Mercury Sable pulled along side of him and asked the defendant if he knew of a place to purchase drugs. The defendant then got into the vehicle, directed the driver to the intersection of St. Claude and Desire Streets, and pointed out the place where the driver could purchase the drugs he *1154 wanted. When the driver returned the defendant back Rto the intersection of Royal Street near Elysian Fields the defendant asked the driver what was he going to get out of the deal, and the driver then offered to let the defendant rent the vehicle for one hundred dollars for a week.
While the defendant was incarcerated for the traffic violations Detective Walsh arranged for Mr. Dolce to view a physical line-up. Detective Walsh testified that he chose five other men who fit the same physical description as the defendant to participate in the line-up. Once all of the men were in line, all wearing wire frame glasses, Mr. Dolce chose the defendant as the person who stole his vehicle. Detective Walsh charged the defendant with the crime.
ERRORS PATENT
A review of the record revealed no errors patent.
ASSIGNMENT OF ERROR NUMBER 1
The defendant complains it was reversible error to permit the State’s witness to comment on the defendant’s behavior prior to his participation in the physical line-up, and the evidence penalized the defendant for the exercise of his Sixth Amendment right to counsel.
La.C.Cr.P. art.841 provides in part:
An irregularity of error cannot be availed of after verdict unless it was objected to at the time of occurrence.
The defendant alleges the State elicited irrelevant and inadmissible evidence from Detective Walsh at trial that was not mentioned at the motion hearing. At trial Detective Walsh testified that prior to the physical line-up the defendant, at the suggestion of his attorney, switched glasses with the guy standing next to him in the line-up. Defense counsel was present during Detective Walsh’s testimony at trial and failed to object to the nature of the | ^testimony at the time it was given. In State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609, the Louisiana Fifth Circuit Court of Appeal held that when a defendant fails to lodge a contemporaneous objection to a witness’ testimony or request an admonition or a mistrial, the defendant waives his right to assert this error on appeal. The court in Styles found that:
LSA-C.Cr.P. art. 841(A) provides, in part, that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” The purpose behind the contemporaneous objection rule under LSA-C.Cr.P. art. 841(A) is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writ denied, 94-0475 (La.4/4/94), 637 So.2d 450, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. This rule relates to objec-tional evidence of other crimes. State v. Guidroz, 498 So.2d 108 (La.App. 5 Cir.1986).
Id. In the instant case, as in Styles, since the defendant failed to object at trial to the testimony of Detective Walsh, he has now waived his right to assert this error on appeal. Thus, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 2
The defendant next claims that the trial court imposed an excessive sentence.
Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. *1155 Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992).
|fiGenerally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983). If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Walker, 96-112 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, 535, citing State v. Howard, 414 So.2d 1210 (La.1982).
La. R.S. 14:64.1 provides:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
B. Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.
La. R.S. 15:529.1(A)(2)(a) provides:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
In State v. Finley, 95-553 (La.App. 3 Cir. 12/6/95), 664 So.2d 775, the Third Circuit found a fifty year sentence for a defendant convicted of first degree robbery and adjudged a multiple offender was not excessive. In State v. Jackson, 31,849 (La.App. 2 Cir. 3/31/99), 734 So.2d 54 the Second Circuit found a fifty year sentence for a defendant convicted of first degree robbery and adjudged a second felony offender was not excessive.
In the instant case, the trial court took into consideration that the defendant had prior armed robbery convictions as a juvenile and as an adult. The defendant also had other violent offenses on his rap sheet. The trial court found that because the defendant had a prior armed robbery conviction as an adult in 1994 the defendant should be sentenced to fifty years. Additionally, the defendant has failed to prove the trial court judge abused the liberal discretion allowed in sentencing. Therefore, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we find that the trial court did not commit reversible error when it permitted the witness to comment on the defendant’s behavior prior *1156 to his participation in the line up. The defendant did not prove that the sentence imposed was excessive or an abuse of the trial court’s discretion.
Therefore, the defendant’s conviction and sentence are affirmed.
AFFIRMED.